1

2

3

4                                                            FILED
                                                    CLERK, U.S. DISTRICT COURT

5                                                      06/25/2015

6                                              CENTRAL DISTRICT OF CALIFORNIA
                                               BY: _____ DG _____ DEPUTY

7                              UNITED STATES DISTRICT COURT

8                             CENTRAL DISTRICT OF CALIFORNIA

9

10   REBECCA LOPEZ and JOSE LOPEZ as       )   CASE NO. CV 15-01745 MMM (MANx)
     individuals and successors in interest to  )
11   decedent GABRIEL LOPEZ,               )
                                           )
12              Plaintiff,                  )   ORDER GRANTING DEFENDANTS'
                                           )   MOTIONS TO DISMISS; DENYING
13         vs.                             )   MOTION TO STRIKE AS MOOT
                                           )
14   COUNTY OF LOS ANGELES, LOS            )
     ANGELES SHERIFF'S DEPARTMENT,         )
15   CITY OF SAN FERNANDO, SAN             )
     FERNANDO POLICE DEPARTMENT and        )
16   DOES 1 to 10, inclusive,              )
                                           )
17              Defendants.                 )
                                           )
18

19         Plaintiffs Rebecca and Jose Lopez filed this action on October 24, 2014, individually and as

20   successors in interest to their son, Gabriel Lopez.  They named as defendants the County of Los Angeles

21   ("the County"), Los Angeles Sheriff's Department ("LASD"), City of San Fernando ("San Fernando"),

22   and San Fernando Police Department ("SFPD").[1]

23         On March 30, 2015, San Fernando and SFPD filed a motion to dismiss plaintiffs' claims,[2] as well

24

25   _____

26         [1]Complaint, Docket No. 1 (Mar. 10, 2015).

27         [2]San Fernando's Motion to Dismiss Portions of Plaintiff's Complaint ("SF MTD"), Docket No.
     6 (Mar. 30, 2015).  See also San Fernando's Reply to Opposition to Motion to Dismiss, Docket No. 20
28   (June 16, 2015).

as a motion to strike their prayer for punitive damages.[3]  On April 17, 2015, the County and LASD filed a motion to dismiss,[4] which they amended the same day.[5]  Plaintiffs oppose both motions.[6]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds defendants' motions appropriate for decision without oral argument; the hearing calendared for June 29, 2015, is therefore vacated, and the matter taken off calendar.

# I.  FACTUAL BACKGROUND

On August 12, 2014, Gabriel Lopez was the victim of a fatal officer-involved shooting in San Fernando, California.[7]  As Lopez was leaving his residence, police officers purportedly fired multiple gunshots at him.[8]  Lopez did not survive.[9]

Plaintiffs assert that Lopez did not pose any reasonable threat of violence to the officers because he did not make any "aggressive movements," "furtive gestures," or "physical movements" from which a reasonable officer could have believed that he posed a risk of death or serious bodily injury to any individual.[10]  Accordingly, the complaint asserts that the officers, and defendants, who failed properly to train and supervise the officers, exhibited deliberate indifference to Lopez's Fourth

---

[3]SF's Motion to Strike Portions of Plaintiff's Complaint ("MTS"), Docket No. 5 (Mar. 30, 2015); San Fernando's Reply to Opposition to Motion to Strike, Docket No. 21 (June 16, 2015).

[4]County/LASD's Motion to Dismiss Portions of Plaintiff's Complaint, Docket No. 10 (Apr. 16, 2015).

[5]County/LASD's Amended Motion to Dismiss Portions of Plaintiff's Complaint ("LA MTD"), Docket No. 12 (Apr. 17, 2015).  See also County/LASD's Reply to Opposition to Motion to Dismiss, Docket No. 23 (June 16, 2015).

[6]Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Opposition to SF"), Docket No. 17 (June 10, 2015); Plaintiffs' Opposition to Defendant's Motion to Strike ("Opposition to Strike"), Docket No. 18 (June 10, 2015)

[7]*Id.*, ¶ 19.

[8]*Id.*

[9]*Id.*

[10]*Id.,* ¶¶ 19–22.

Amendment right to be free from unreasonable searches and seizures and Fourteenth Amendment right to substantive due process, privacy, and freedom from unreasonable government interference with Lopez's family.[11]   Plaintiffs contend the officers' use of force was "deadly, excessive, unnecessary, and unlawful."[12]

On September 5 and October 14, 2014, plaintiffs assert that they filed claims for damages with the County as required by the Government Claims Act, California Government Code § 910, *et seq.*[13]   The County rejected the claims on November 12, 2014.[14]   On September 5, 2014, plaintiffs filed a claim for damages with the City of Los Angeles; that claim was rejected on September 10, 2014.[15]   On September 17, 2014, plaintiffs filed a claim for damages with the City of San Fernando; this claim was rejected on February 15, 2015.[16]

## II.  DISCUSSION

### A.    Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

---

[11]*Id.*, ¶ 28.

[12]*Id.*, ¶ 19.

[13]*Id.*, ¶ 11.

[14]*Id.*

[15]*Id.*, ¶ 12.

[16]*Id.*, ¶ 13.

1   The court need not, however, accept as true unreasonable inferences or conclusory legal

2   allegations cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 555

3   (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

4   allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more

5   than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

6   Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim

7   to relief that is plausible on its face.' . . .   A claim has facial plausibility when the plaintiff pleads factual

8   content that allows the court to draw the reasonable inference that the defendant is liable for the

9   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555

10  ("Factual allegations must be enough to raise the right to relief above the speculative level, on the

11  assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations

12  omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint

13  to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that

14  content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and

15  *Twombly*).

16  **B.   Defendants' Motions to Dismiss**

17  Defendants contend that all of plaintiffs' claims fail because they are not plausibly alleged under

18  Rule 8, *Twombly*, and *Iqbal*.   The court addresses each claim in turn.

19  **1.   Plaintiffs' Wrongful Death Claim**

20  **(a)   Whether Defendants Are Entitled to Governmental Immunity**

21  California Government Code § 815, *et seq*., provides immunity to public entities in California.

22  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, *Cal*., 730 F.3d 1111, 1124 (9th Cir.

23  2013).   Under the Act, a public entity is not "liable for its conduct or omission to the same extent as a

24  private person or entity." *Arres v. City of Fresno*, No. CV F 10 1628 LJO SMS, 2011 WL 284971, *23

25  (E.D. Cal. Jan. 26, 2011) (citing *Zelig v. County of Los Angeles,* 27 Cal.4th 1112, 1128 (2002)).   Rather,

26  it is liable "*as provided by statute*."   *Hoff v. Vacaville Unified School Dist*., 19 Cal.4th 925, 932 (1998)

27  (citing CAL. GOV'T. CODE § 815(a) (emphasis added)).

28  "[B]ecause under the [Government] Claims Act all governmental tort liability is based on statute,

4

the general rule that statutory causes of action must be pleaded with particularity is applicable." *Lopez v. So. Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 795 (1985); *Arres*, 2011 WL 284971 at \*23. Thus, "to state a cause of action against a public entity, every fact material to the existence of its statutory liability must be pleaded with particularity." *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal.App.3d 814, 819 (1960). Moreover, "the plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity." *Keyes v. Santa Clara Valley Water Dist.,* 128 Cal.App.3d 882, 885 (1982).

Plaintiffs' complaint does not allege the statutory provision pursuant to which the defendants, each of which is a government entity, can be sued for wrongful death. The theory of liability alleged in the complaint is somewhat unclear; while the complaint pleads that the defendant municipal entities directly caused Gabriel's death by shooting him, that is implausible.[17] Thus, it would appear plaintiffs wish to hold defendants vicariously liable. This is proper under California law. See CAL. GOV'T. CODE § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative"); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune").

Plaintiffs, however, have failed to allege any specific statutory basis for either direct or vicarious liability in their complaint. Because they have failed to do so, their wrongful death claim must be dismissed. See *Lang v. County of Sonoma*, No. C12 0983 TEH, 2012 WL 4674527, \*5 (N.D. Cal. Oct. 2, 2012) ("But he has failed to properly plead either vicarious liability claims under Government Code section 815.2 or any statutory basis for direct municipal liability claims. Accordingly, the Court

---

[17]Under California law, the mere fact that "state public entities always act through individuals, [ ] does not convert a claim for direct negligence into one based on vicarious liability." *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1113 (2004), disapproved of on other grounds by *Hayes v. County of San Diego*, 57 Cal.4th 622 (2013).

1   DISMISSES both the negligence and IIED claims against the municipal entities without prejudice to

2   Plaintiff's proper re-pleading of such claims"); *Arres*, 2011 WL 284971 at *24 ("The complaint pleads

3   no statutory basis to impose wrongful death-negligence liability on the City. Plaintiffs seek to impose

4   liability on the City beyond that alleged or permitted by the Claims Act to further warrant dismissal of

5   the wrongful death-negligence claim against the City"). This claim is therefore deficient and must be

6   dismissed.

7                              **(2)        Whether the Claim is Plausibly Alleged**

8           Even were the wrongful death claim not deficient because it fails to identify the statutory basis

9   for liability under the Government Claims Act, it would have to be dismissed because it fails plausibly

10  to plead a claim for wrongful death.[18]   The complaint does not provide a coherent explanation of the

11  ───────────────

12      [18]Plaintiffs do adequately allege standing to bring a wrongful death claim. In California,
    wrongful death is a creature of statute, existing "only so far and in favor of such person[s] as the

13  legislative power may declare." *Ceja v. Rudolph & Sletten, Inc.*, 56 Cal.4th 1113, 1118 (2013) (quoting
    *Justus v. Atchison*, 19 Cal.3d 564, 575 (1977)); see also *Scott v. Thompson*, 184 Cal.App.4th 1506, 1510

14  (2010) ("In California, an action for wrongful death is governed solely by statute, and the right to bring
    such an action is limited to those persons identified therein") (internal quotation marks omitted).

15  "Standing to sue for wrongful death is governed by California Code of Civil Procedure § 377.60, and
    the category of persons eligible to bring wrongful death actions is strictly construed." *Cooke v. Liles*,

16  No. CV 12-01844 SBA, 2013 WL 1196990, *6 (N.D. Cal. Mar. 25, 2013) (citing CAL. CODE CIV. PROC.
    § 377.60; *Steed v. Imperial Airlines,* 12 Cal.3d 115, 119-20 (1974)). "[A] wrongful death plaintiff must

17  plead and prove standing." *Nelson v. County of Los Angeles,* 113 Cal.App.4th 783, 789 (2004). That
    is, a "plaintiff who brings a wrongful death suit as an heir must establish the absence of issue by the

18  decedent and the entitlement or propriety of the heir to seek recovery under § 377.60, i.e. that the heir
    actually has standing under § 377.60." *Cooke*, 2013 WL 1196990 at *6.

19          Section 377.60 states, in relevant part:
            "A cause of action for the death of a person caused by the wrongful act or neglect of

20          another may be asserted by any of the following persons or by the decedent's personal
            representative on their behalf: (a) The decedent's surviving spouse, domestic partner,

21          children, and issue of deceased children, or, if there is no surviving issue of the decedent,
            the persons, including the surviving spouse or domestic partner, who would be entitled

22          to the property of the decedent by intestate succession. (b) Whether or not qualified under
            subdivision (a), if they were dependent on the decedent, the putative spouse, children of

23          the putative spouse, stepchildren, or parents[.]" CAL. CODE CIV. PROC. § 377.60.

24          In the absence of surviving issue, a parent may have standing to bring a wrongful death cause of
    action due to the laws of intestate succession. *Id*., § 377.60(a); see CAL. PROB. CODE § 6402(b)

25  (establishing that a decedent's parents become heirs where there is no surviving issue); *Cooke*, 2013 WL
    1196990 at *6 ("Section 377.60(a) affords standing to those persons entitled to the decedent's property

26  through intestate succession, but only if there is no surviving issue of the decedent"); *Kelly v. Qualitest*

27

28

                                                            6

basis for defendants' liability.  It alleges that "defendants" used excessive and unreasonable force against Gabriel, which caused his death, and that "defendants" did so while acting within the course of their employment with the County of Los Angeles, LASD, the City of San Fernando, and SFPD.  Given that defendants *are* themselves these entities, and that they are municipal actors that cannot possibly have used excessive force, the claim lacks facial plausibility.  For the same reason, it neither provides "fair notice" of the nature of the claim nor the "grounds" on which the claim rests.

Consequently, plaintiffs have failed to state a wrongful death claim under Rule 8, *Twombly*, and *Iqbal*, and the claim must be dismissed for this reason as well.  See *Nastrom v. New Century Mortgage Corp.*, No. 11-CV-01998 DLB, 2012 WL 2090145, *3 (E.D. Cal. June 8, 2012) ("As Defendants indicate, Plaintiffs fail to clearly allege the most basic facts underlying their asserted claims and fail to distinguish between the alleged conduct of the multiple named defendants. . . .  Plaintiffs have provided neither 'fair notice' of the nature of the claim nor the 'grounds' on which their claims rest"); *Estillore v. Countrywide Bank FSB*, No. CV F 10-1243 LJO GSA, 2011 WL 348832, *5 (E.D. Cal. Feb. 2, 2011) ("The complaint fails to satisfy F.R.Civ.P. 8.  The complaint fails to distinguish alleged wrongdoing of the lender defendants and the complaint's other defendants First Mutual Mortgage, Inc. [ ]and Financial Title Co. . . .  The complaint focuses on origination of Mr. Estillore's loans but fails to allege facts that ReconTrust or MERS were involved in loan origination. . . .  The complaint lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly [and this] warrant[s] dismissal of this action"); *Franco v. Fed. Nat. Mortgage Ass'n*, No. CV 10-00735 DAE KSC, 2011 WL 1842970, *5 (D. Haw. May 13, 2011) ("Plaintiff's allegations do not distinguish between Defendants and do not

*Pharm., Inc.*, No. F06-116 AWI-LJO, 2006 WL 2536627, *4 (E.D. Cal. Aug. 31, 2006) ("For purposes of intestate succession, parents may recover as heirs if there is no issue of the decedent" (internal quotation marks omitted)); *Chavez v. Carpenter*, 91 Cal.App.4th 1433, 1440 (2001) ("[W]here a decedent leaves issue, his parents would not be his heirs at all . . . and therefore not entitled to maintain this [wrongful death] action at all" (internal quotation marks omitted)).  Thus, to plead a wrongful death cause of action adequately, a parent suing as an heir "must establish the absence of issue by the decedent and the entitlement or propriety of the heir to seek recovery under § 377.60." *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F.Supp.2d 1009, 1018 (E.D. Cal. 2013).

Plaintiffs allege that Gabriel died without issue; they also allege that he was unmarried and that they are his parents and only successors.  This suffices to plead standing under § 377.60, and defendants do not contend otherwise.

detail what specific conduct resulted in the fraudulent misrepresentation sufficient to survive *Iqbal–Twombly*"); see also *Cortes v. Arizona*, No. CV 12-2204 PHX DGC, 2013 WL 173802, *1 (D. Ariz. Jan. 16, 2013) ("Plaintiff's complaint does not satisfy the pleading requirements set forth in *Twombly* and *Iqbal*. The entirety of the complaint is an incoherent and disjointed, very brief story about an event apparently involving the Phoenix Municipal Court . . . , but it is unclear from the factual narrative how Defendant is liable for any such claims").

### 2. Whether Plaintiffs' § 1983 Claims Must Be Dismissed

Plaintiffs assert two claims under § 1983. First, they contend that defendants used excessive force in violation of Gabriel's Fourth Amendment right to be free from unreasonable searches and seizures. Second, they contend that the excessive force violated their Fourteenth Amendment right to be free, as parents, from interference with their familial relationship.

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights established by the Constitution or laws of the United States.[19] *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1056 (9th Cir. 2002). The statute "is not itself a source of substantive rights." Rather, it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979). To prove a § 1983 claim, a plaintiff must show (1) that defendants violated his federal rights and (2) that they acted under color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988); *Baker*, 443 U.S. at 140; *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 479 (9th Cir. 1998); see also *Johnson v. Hawe*, 388 F.3d 676, 681 (9th Cir. 1994) ("'The elements of a section 1983 action are: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States,'" quoting *Alford v. Haner*, 333 F.3d 972, 975-76 (9th

---

[19]Section 1983 states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

Cir. 2003)).

Here, there is no question here that defendants are municipal actors.[20]  A municipality can be sued under § 1983 where a municipal policy or custom has caused an alleged violation of constitutional rights.  *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  A municipality cannot, however, be held liable under § 1983 "*solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  *Id*. at 691 (emphasis original).  See also *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior").

Generally, a plaintiff can demonstrate municipal liability for a constitutional violation in one of three ways.  First, he can show that a person or entity with decision-making authority within the municipality expressly enacted or authorized an unconstitutional policy or gave an unconstitutional order.  See *Monell*, 436 U.S. at 694 (holding that municipal liability is properly imposed where a policymaker "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers"); see also *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) ("[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question").

Second, a plaintiff can prove that his injury was the result of a municipal custom, i.e., a practice "so permanent and settled" as to constitute a "custom or usage" of the municipal defendant.  See *Monell*, 436 U.S. at 691; see also *Pembaur*, 475 U.S. at 481-82 n. 10.  If a plaintiff elects to employ this method of proving municipal liability, she need not show that the "custom has [ ] received formal approval through the body's official decisionmaking channels." *Pembaur*, 475 U.S. at 481-82 n. 2.  Rather, "liability is attributed through a policymaker's actual or constructive knowledge of and acquiescence in the unconstitutional custom or practice." *Doggett v. Perez*, 348 F.Supp.2d 1179, 1187 (E.D. Wash. 2004); see also *Thompson v. City of Los Angeles*, 885 F.2d 1439,

---

[20]Complaint, ¶¶ 7-10 (alleging each defendant is a "municipal corporation").

1443-44 (9th Cir. 1989) ("[A] local government may be liable for its custom irrespective of whether official policymakers had actual knowledge of the practice at issue.  The existence of custom as the basis for liability under § 1983 thus serves a critical role in insuring that local government entities are held responsible for widespread abuses or practices that cannot be affirmatively attributed to the decisions or ratification of an official policymaker but are so pervasive as to have the force of law"). Only "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity" will support the imposition of municipal liability based on custom. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citing *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002)); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy").

Finally, a local governmental body can be held liable if its failure to train employees or failure to provide a different kind of training causes a constitutional violation, and the failure amounts to deliberate indifference to the rights of individuals with whom those employees come into contact.  See *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989) ("[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury"); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1186 (9th Cir. 2002) ("[A] plaintiff can allege [a claim for municipal liability by pleading] that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees").  A plaintiff employing either the second or third method of proving municipal liability

> "must show: (1) that a County employee violated [his] rights; (2) that the County has customs or policies that amount to deliberate indifference (as that phrase is defined by *Canton*); and (3) that these policies were the moving force behind the employee's

10

violation of [plaintiff's] constitutional rights, in the sense that the [municipality] could have prevented the violation with an appropriate policy." *Gibson*, 290 F.3d at 1194.

Defendants argue that plaintiffs' § 1983 claims must be dismissed because their allegations are "conclusory" and fail to state a plausible claim for relief.[21]   The court agrees.  For many years, *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988), set the standard for

---

[21]The County and LASD also argue that to the extent they are asserting violation of Gabriel's Fourth Amendment rights in a survivor claim, plaintiffs have not complied with California Civil Code § 377.32's requirement that an affidavit be filed providing certain information that shows the plaintiff has standing to sue as the decedent's successor-in-interest. The question is whether this requirement is a substantive or procedural rule of state law.  Few courts have directly addressed this question. Those that have done so conclude that it is a substantive state law rule.  See, e.g., *Anderson v. Hickman*, No. CIV. S-07-1466 LKK/DAD, 2008 WL 2397470, *1 & n. 1 (E.D. Cal. June 11, 2008) (stating that "[t]he requirement that putative successors-in-interest be able to affirm the absence of pending probate proceedings suggests the existence of a substantive state law rule: where there is a pending probate petition, no putative successor-in-interest may commence suit," and that "[t]he Ninth Circuit's language in *Tatum* also seems to suggest (albeit obliquely) that a successor-in-interest must comply with both the substantive requirements in section 377.30 and the procedural requirements in section 377.32," citing *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1093 n. 2 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's 'successor in interest' may prosecute the survival action if the person purporting to act as successor in interest satisfies the requirements of California law, which *Tatum* did here. See CAL. CIV. P. CODE §§ 377.30, 377.32")); see also *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2007 WL 2349338, *3 (N.D. Cal. Aug. 14, 2007) ("Defendants also argue that the spouses and children of the decedents may not proceed as successors in interest because they have not complied with section 377.32 of the California Code of Civil Procedure by providing death certificates. The Court previously found that a § 377.32 declaration is not required under Federal Rule of Civil Procedure 17(b).  Since that ruling, as defendants point out, the Ninth Circuit has suggested that the § 377.32 formalities do apply in cases governed by Rule 17(b)," citing Tatum*, 441 F.3d at 1093-94 n. 2).
   "California law requires a plaintiff who commences a survival action . . . as a decedent's 'successor in interest' to 'execute and file an affidavit or declaration under penalty of perjury, stating: (1) the decedent's name; (2) the date and place of decedent's death; (3) that no proceedings are pending in California for the administration of the decedent's estate; (4) either that the declarant is the decedent's successor in interest or is authorized to act on behalf of the decedent's successor in interest; and (5) that no other person has a superior right to commence the action or proceeding for the decedent.'" *Soliz v. City of Bakersfield*, No. 1:12 CV 00841 LJO, 2012 WL 3645358, *4 (E.D. Cal. Aug. 21, 2012) (citing *Dillard v. Curtis*, No. CV 04-1449 PJH, 2004 WL 2496130, *7 (N.D. Cal. Nov. 3, 2004) (in turn citing CAL. CODE CIV. PROC. § 377.32(a), (b))).  Although plaintiffs did not attach the requisite affidavit to their complaint, they appended one to their opposition.  Plaintiffs' affidavit satisfies the requirements of § 377.32.  California law requires only that plaintiffs file an affidavit, not that it be a part of the complaint.  The County and LASD withdrew their motion to dismiss on this basis in their reply.

pleading municipal liability claims in the Ninth Circuit.  That case held that "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'"  *Id.* (citing *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)).  *Karim-Panahi*, however, predates *Twombly* and *Iqbal*.  See *Young v. City of Visalia*, 687 F.Supp.2d 1141, 1148 (E.D. Cal. 2009) ("In light of *Iqbal*, it would seem that the prior Ninth Circuit pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable"); see also *Warner v. County of San Diego*, No. 10cv1057 BTM (BLM), 2011 WL 662993, *3 (S.D. Cal. Feb. 14, 2011) ("Since [*Karim-Panahi*], *Twombly* and *Iqbal* have made it clear that conclusory allegations that merely recite the elements of a claim are insufficient for 12(b)(6) purposes"); *Canas v. City of Sunnyvale*, No. C 08–5771 JF (PSG), 2011 WL 1743910, *5 (N.D. Cal. Jan. 19, 2011) (stating that *Karim-Panahi* and similar cases that applied the "bare allegation" standard "no longer are controlling in the post-*Iqbal*/*Twombly* era").

Thus, to be viable, plaintiffs' claim must satisfy the plausibility standard articulated in *Iqbal*. 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint  suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" quoting *Twombly*, 550 U.S. at 555, 557); *al-Kidd v. Ashcroft*, 580 F.3d 949, 974 (9th Cir.  2009) (stating that *Iqbal* clarified that the pleading standard described in *Twombly* applies to civil rights cases); see also *Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (applying *Twombly* to a *Monell* claim); *Harvey v. City of Fresno*, No. 1:08-CV-01399- OWW-DLB, 2009 WL 3157524, *6 (E.D. Cal. Sept. 28, 2009) (applying the standard outlined in *Iqbal* and *Twombly* to a municipal liability claim under § 1983).

After *Iqbal*, *Monell* allegations must identify the challenged policy, custom, or failure to train, explain why it is deficient, and state how it harmed plaintiff.  Where a claim is based on a failure to train, the complaint must also plead facts showing that the municipality's conduct amounted to deliberate indifference.  *Young*, 687 F.Supp.2d at 1153 (stating that to plead a viable *Monell* claim, plaintiff must allege "the challenged policy/custom, explain[ ] how the policy/custom was deficient, explain[ ] how the policy/custom caused the plaintiff harm, and reflect[ ] how the

policy/custom amounted to deliberate indifference, i.e. explain[ ] how the deficiency involved was obvious and the constitutional injury was likely to occur"); see also *Harvey v. City of South Lake Tahoe*, No. CIV S–10–1653 KJM EFB PS, 2011 WL 3501687, *3 (E.D. Cal. Aug. 9, 2011) (dismissing plaintiff's municipal liability claims because "[p]laintiff has not identified any [municipal] policy or custom in his first amended complaint, has not alleged that the . . . employees acted pursuant to a County policy or custom, and has not alleged that their conduct conformed to an official policy or custom.  Additionally, because he has not identified any such policy or custom, he also has not explained how the policy or custom is deficient, has not explained how the policy or custom caused him harm, and has not explained how the policy or custom amounted to deliberate indifference" (citations omitted)); *Shoval v. Sobzak*, No. 09-CV-01348-H (JMA), 2009 WL 2780155, *2 (S.D. Cal. Aug. 31, 2009) (allegations that the San Diego Sheriff's Department authorized, sanctioned, and ratified an individual defendant's unconstitutional actions, that the County failed to train or supervise the individual defendant in a reckless or grossly negligent manner, and that it was Sheriff's Department custom to allow officers to "proceed without supervision and with explicit authorization to use unconstitutional means" did not state a municipal liability claim because plaintiff did "not allege any facts to support holding the County of San Diego liable under one of the theories that can show a policy or custom of a municipality.  These bare bones allegations are little more than a formulaic recitation of the elements of a municipal civil rights claim and are insufficient to raise Plaintiff's right to relief above the speculative level").

Plaintiffs' complaint fails to plead a plausible *Monell* claim based on defendants' alleged policies and practices.[22]  Plaintiffs do not sufficiently identify the specific policy, custom, or failure to train being challenged, explain why it is deficient, or state how it harmed Gabriel or them.  Nor do

---

[22]See Complaint, ¶ 53 ("(a) Defendants . . . failed adequately to train and educate officers in the use of reasonable and proper force and failed to enforce the department's written regulations with respect to uses of force; (b) Defendants . . . failed to adequately supervise the actions of officers under their control and guidance; (c) Defendants . . . fostered and encouraged an atmosphere of lawlessness, abuse, and unconstitutional misconduct, [so] as to encourage their police officers to believe that excessive use of force on residents of the COUNTY and CITY OF SAN FERNANDO or persons present therein, including the members of minority groups[,] is permissible and that such conduct would be overlooked without discipline or other official ramifications").

1  plaintiffs allege facts showing that the defendants acted with deliberate indifference in failing properly

2  to train their employees.  Rather, plaintiffs do little more than recite the elements of a municipal liability

3  claim.  This is not sufficient under *Twombly* and *Iqbal*.

4       Because plaintiffs fail plausibly to allege that defendants are liable under *Monell*, their second

5  and third cause of actions under § 1983 must be dismissed.  See, e.g., *White v. City of Vacaville*, No.

6  2:12–cv–00515–GEB–GGH, 2012 WL 1455221, *6 (E.D. Cal. Apr. 26, 2012) ("Plaintiff's

7  allegations 'simply recite the elements of [a *Monell* claim and do not] contain sufficient allegations

8  of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.

9  Therefore, Plaintiff's *Monell* claim against the City is dismissed"); *Warner*, 2011 WL 662993 at *4

10  ("Here, Plaintiffs' *Monell* claim consists of formulaic recitations of the existence of unlawful

11  policies, customs, or habits.  Plaintiffs do not allege any specific facts giving rise to a plausible

12  *Monell* claim.  Therefore, Defendants' motion to dismiss is granted as to Plaintiffs' second cause of

13  action"); *Williams v. City of Cleveland*, No. 1:09 CV 1310, 2009 WL 2151778, *4 (N.D. Ohio July

14  16, 2009) ("To merely state that the City has a policy or custom is not enough; Plaintiff must allege

15  facts, which if true, demonstrate the City's policy, such as examples of past situations where law

16  enforcement officials have been instructed to [commit constitutional violations]").

17      **3.**    **Whether Plaintiffs' Bane Act Claim Must Be Dismissed**

18       The Bane Act is an anti-hate crime statute.  See *In re Joshua H.*, 13 Cal.App.4th 1734, 1748 n.

19  9 (1993).  It "provides that a person may bring a cause of action 'in his or her own name and on his or

20  her own behalf' against anyone who 'interferes by threats, intimidation or coercion,' with the exercise

21  or enjoyment of any constitutional or statutory right."  *Bay Area Rapid Transit Dist. v. Superior Court*,

22  38 Cal.App.4th 141, 144 (1995) (quoting CAL. CIV. CODE § 52.1). Plaintiffs' Bane Act claim alleges that

23  defendants violated not only Gabriel's rights, but *their* rights under Article 1, Section 13, of the

24  California Constitution, to be free from unreasonable searches and seizures and from the use of

25  unreasonable and excessive force.[23] Defendants contend that plaintiffs cannot maintain a Bane Act claim

26

27       [23]Plaintiffs also cite a violation of California Civil Code § 43 as a basis for their Bane Act claim.
Section 43 provides:

28      "Besides the personal rights mentioned or recognized in the Government Code, every

on Gabriel's behalf because the act requires that the injured party bring an action "in his own name and on his own behalf."  See CAL. CIV. CODE § 52.1(b).

Defendants rely on *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141 (1995) (*"BART"* ).  In *BART,* plaintiffs alleged that an officer's conduct, which resulted in their son's death, interfered with their constitutional right to parent and thus violated § 52.1.  *Id.* at 144.  Based on the statutory language of § 52.1, which allows the individual with whose rights the defendant purportedly interfered to bring an action "in his or her own name and on his or her own behalf," the court concluded that "[t]he Bane Act is simply not a wrongful death provision. It clearly provides for a *personal* cause of action for the victim of a hate crime." *Id.*  Reading § 52.1 in conjunction with § 51.7, which states that individuals have the right to be free from violence or threats of violence due to various personal characteristics, such as race or religion, the court held that § 52.1 claims can only be asserted by plaintiffs who themselves have been subjected to interference with constitutional rights, violence or threats. *Id.*  Because it found that the Bane Act did not provide a cause of action for persons who were not present and did not witness the violence, threats, or interference, and because plaintiffs' claim was a wrongful death claim based on violation of their own constitutional rights, the court sustained defendant's demurrer.  *Id.* at 144-45.

Cases interpreting *BART* have held that the decision does not prevent parents from bringing a survival action on behalf of a deceased child whose constitutional rights were violated.  This is because "[u]nlike a wrongful death cause of action, a survival cause of action is not a new cause of action that vests in heirs on the death of the decedent, but rather is a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives the event."  *Moore ex rel. Moore v. County of Kern*, No. 05-CV-1115-AWI-SMS, 2007 WL 2802167, *6 (E.D. Cal. Sept. 23, 2007).  Thus, where plaintiffs allege claims as successors in interest, i.e., where the claim "is based on the violation of [the decedent's] constitutional rights," *BART* does not preclude relief.  See *Dela Torre v. City of Salinas*, No. C 09 00626 RMW, 2010 WL 3743762, *7 (N.D. Cal. Sept. 17, 2010); see also *Estate*

person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations."  CAL. CIV. CODE § 43.

*of Crawley v. Kings Cnty.*, No. 13-CV-02042-LJO, 2014 WL 2174848, *11 (E.D. Cal. May 23, 2014) ("Accordingly, the holding in *Bay Area Rapid Transit Dist.* appears to be limited to whether a parent may state their own personal claim under the Bane Act on the theory that the death of their child interfered with the parents' constitutional right to parent"); *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F.Supp.2d 1009, 1016 (E.D. Cal. 2013) ("[T]he Court agrees with the reasoning set forth in *Dela Torre*"); *Cooke*, 2013 WL 1196990 at *8 ("Although Plaintiffs have alleged sufficient facts to state [a] claim under the Bane Act as to certain Defendants, Plaintiffs have not alleged sufficient facts to establish their standing to do so. As noted, Plaintiffs have not shown that they have survival standing, which is a prerequisite to proceeding on their Bane Act claim").

Thus, to the extent plaintiffs allege this claim as the survivors of Gabriel, the claim is cognizable and cannot be dismissed for lack of standing. Plaintiffs also allege, however, that defendants interfered with *their* rights.[24] To the extent they allege a Bane Act claim in their own right, defendants are correct that plaintiffs' claim is barred by *BART*. See 38 Cal.App.4th at 144 ("Civil Code section 52.1 must be read in conjunction with section 51.7, which provides that all persons have the right to be free from 'violence, or intimidation by threat of violence committed against their persons' because of race, color, religion, ancestry, etc. This reinforces the rational interpretation of the Bane Act, i.e., that it is limited to plaintiffs who themselves have been the subject of violence or threats"); see also *Medrano*, 921 F.Supp.2d at 1016 ("Accordingly, the Court finds that Plaintiffs lack standing to bring a claim under the Bane Act on their own behalf").

Moreover, to the extent plaintiffs assert the claim as a survival cause of action, it is deficient and must be dismissed. This is because plaintiffs allege that "*defendants* fatally assaulted, battered, shot and killed Gabriel."[25] In addition to the fact that this allegation is facially implausible, as discussed, because defendants are municipal actors, none of them can be held *directly* liable for a Bane Act violation. The

---

[24]Complaint, ¶ 64 ("[defendants] were deliberately indifferent to *plaintiffs'* protected rights" (emphasis added)); *id.*, ¶ 67 (the acts and omissions of defendants "resulted in the violation of *plaintiffs'* rights" (emphasis added)); id., ¶ 68[Complaint, ¶67 ("with the intent to deprive *plaintiffs* . . . of their protected rights and privileges" (emphasis added)).

[25]*Id.*, ¶ 62.

1  Government Claims Act does not permit a municipal defendant to be sued absent a statute permitting

2  the imposition of direct liability.  See CAL. GOV'T CODE § 815 ("Except as otherwise provided by

3  statute: . . . A public entity is not liable for an injury, whether such injury arises out of an act or omission

4  of the public entity or a public employee or any other person.").  The complaint does not allege the

5  existence of any statute permitting direct liability.  Under California Government Code § 815.6,

6      "[w]here a public entity is under a mandatory duty imposed by an enactment that is

7      designed to protect against the risk of a particular kind of injury, the public entity is liable

8      for an injury of that kind proximately caused by its failure to discharge the duty unless

9      the public entity establishes that it exercised reasonable diligence to discharge the duty."

10     CAL. GOV'T CODE § 815.6.

11  In order for a statute to impose a mandatory duty under § 815.6, however, "it must *require,* rather than

12  merely authorize or permit, that a particular action be taken or not taken." *Haggis v. City of Los Angeles,*

13  22 Cal.4th 490, 498 (2000).  "Based on [its] plain language, it is clear that section[ ] 52.1 do[es] not

14  require that a particular action be taken or not taken."  See *Gonzalez v. County of Los Angeles*, No. CV

15  08-02177 DDP (RZx), 2008 WL 2951272, *3 (C.D. Cal. July 28, 2008); *Valdez v. City of San Jose*, No.

16  4:09 CV 0176 KAW, 2013 WL 6108052, *14 (N.D. Cal. Nov. 18, 2013) ("Section 52.1 merely

17  authorizes actions for equitable and declaratory relief for interference or attempted interference by 'a

18  person or persons' with an individual's constitutional rights. . . . [T]h[is] provision[ ] do[es] not give rise

19  to [a]mandatory duty"); see also *Mayfield v. City of Oakland*, No. CV 07-0583EMC, 2007 WL

20  2261555, *8 (N.D. Cal. Aug. 6, 2007) (implying that § 52.1 does not impose a mandatory duty, but

21  finding that municipal actors could be held vicariously liable).

22      The Bane Act merely provides a right of action for the victim of a hate crime; it imposes no

23  particular obligation.  It also "does not include any implementing guidelines or rules, which is required

24  to establish a mandatory duty claim."  See *Aguilar v. Corral*, No. CV 07-1601 LKK/KJM, 2007 WL

25  2947557, *4 (E.D. Cal. Oct. 9, 2007) (citing *O'Toole v. Superior Court,* 140 Cal.App.4th 488, 510

26  (2006) (holding that a statute gives rise to a mandatory duty only if the statute affirmatively requires that

27  a particular action be taken and provides implementing guidelines or rules)).

28      For this reason, because plaintiffs allege a direct liability Bane Act claim against defendants, the

claim is deficient and must be dismissed.  As noted in *Mayfield*, municipal actors such as defendants can be held vicariously liable under the Bane Act.  See CAL. GOV'T CODE § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative"); *Mayfield*, 2007 WL 2261555 at *8. Because the complaint alleges that *defendants* themselves violated plaintiffs' and Gabriel's rights, they cannot invoke § 815.2(a).  To the extent they seek to do so, in any amended complaint, plaintiffs should identify the underlying conduct by the unnamed police officers that violated Gabriel's rights, and plead why defendants should be held vicariously liable for that conduct, e.g., under § 815.2(a).

### 4.   Whether Plaintiffs' Intentional Interference with Emotional Distress Claim Must Be Dismissed

To state an intentional interference with emotional distress ("IIED") claim under California law, a plaintiff must plead "(1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's severe emotional suffering was (4) actually and proximately caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).  Defendants argue this claim must be dismissed because plaintiffs fail to identify any statute authorizing them to assert the claim, and because they fail adequately to allege the second and third elements of an IIED claim.

The court's earlier conclusion that plaintiffs had failed to allege any statutory basis for imposing wrongful death liability on defendants is equally applicable with respect to the IIED claim.  Plaintiffs cite no statutory authority authorizing them to plead such a claim against defendants.  The cause of action is therefore deficient, and must be dismissed.  See *Hoff*, 19 Cal.4th at 932 ("A public entity is not liable for injury arising from an act or omission except as provided by statute").  In any amended complaint, plaintiffs must identify the statutory provision authorizing them to bring this claim.

Furthermore, plaintiffs fail to allege facts pleading the elements of an IIED claim.  First, they assert in conclusory fashion that defendants intended to cause them emotional distress.  This is not sufficient under *Iqbal* and *Twombly*.  See *Helmer v. Bank of Am., N.A.*, No. 12-CV-00733 TLN, 2013 WL 4546285, *7 (E.D. Cal. Aug. 27, 2013) ("Thus, Plaintiff's conclusory averments of intent without

1  supporting factual allegations are insufficient to support his claim for IIED under the standard set forth

2  by Federal Rule of Civil Procedure 12(b)(6)"); *Settlemyers v. Play LV Gaming Operations*, No.

3  09 CV 02253 RCJ GW, 2011 WL 1042569, *5 (D. Nev. Mar. 18, 2011) ("The allegation of intent

4  to cause injury [in plaintiff's IIED claim] is conclusory"); *Brown v. Allstate Ins. Co.*, 17 F.Supp.2d 1134,

5  1139 (S.D. Cal. 1998) ("Plaintiff's conclusory allegations of outrageous conduct, intent, and severe

6  emotional suffering are so inadequate so as to justify dismissal without prejudice").

7      Plaintiffs also fail to allege severe emotional distress.  "Severe emotional distress means

8  emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized

9  society should be expected to endure it."  *Hughes v. Pair*, 46 Cal.4th 1035, 1051 (2009) (holding that

10  "discomfort, worry, anxiety, upset stomach, concern, and agitation" did not rise to this level).  Plaintiffs

11  allege no facts that satisfy this demanding standard; they simply assert, again in conclusory fashion, that

12  they have and will continue to suffer emotional distress as a result of defendants' conduct.  This is

13  insufficient to plead severe emotional distress.  See *Landucci v. State Farm Ins. Co.*, __F.Supp.3d __,

14  2014 WL 3962845, *9 (N.D. Cal. Aug. 14, 2014) ("Here, Plaintiff fails to allege any form of emotional

15  distress beyond [a] conclusory allegation . . . . Accordingly, Plaintiff has failed to plead sufficient facts

16  to satisfy the 'severe or extreme emotional distress' prong"); *Schultz v. Stericylce, Inc.*, No. CV F

17  13–1244 LJO MJS, 2013 WL 4776517, *8 (E.D. Cal. Sept. 4, 2013) (finding that allegations of "pain

18  and suffering, extreme and severe mental anguish, and emotional distress with no fact[s] to support such

19  symptoms or conditions" failed to meet "severe emotional distress" prong); *Ratachie v. AmeriCredit Fin.

20  Servs., Inc.*, No. CV 11-01351 PHX PGR, 2012 WL 4951218, *3 (D. Ariz. Oct. 17, 2012) ("While

21  the IIED claim in the SAC alleges that the plaintiff 'suffered severe and debilitating emotional distress,

22  humiliation, and degradation' as a result of the defendant's actions, there are no supporting factual

23  enhancements regarding emotional distress that are sufficient to nudge the plaintiff's claim 'across the

24  line from conceivable to plausible' as is required").

25      Finally, plaintiffs fail to allege facts suggesting that defendants' conduct was directed towards

26  them, as opposed to Gabriel.  "The law limits claims of intentional infliction of emotional distress to

27  egregious conduct *toward plaintiff* proximately caused by defendant."  *Christensen v. Superior Court*,

28  54 Cal.3d 868, 905 (1991) (citing *Miller v. National Broadcasting Co.*, 187 Cal.App.3d 1463, 1489

(1986)).  "The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff."  *Id*.  "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory."  *Id*. (citing RESTATEMENT (SECOND) OF TORTS § 868, cmt. g (1979)).  Stated differently, plaintiffs "must allege that the conduct complained of was directed at them, or occurred in their presence."  *Jacobsen v. Marin Gen. Hosp*., 192 F.3d 881, 887 (9th Cir. 1999).  Plaintiffs make no such allegations in their complaint.  The IIED claim is therefore deficient, and must be dismissed.

## III.  CONCLUSION

For the reasons stated, the court grants defendants' motions to dismiss plaintiffs' complaint with leave to amend.[26]  See *In re Daou Sys., Inc*., 411 F.3d 1006, 1013 (9th Cir. 2005) ("Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Plaintiffs may file an amended complaint within twenty (20) days of the date of this order if they are able to remedy the deficiencies the court has noted.

Plaintiffs may not plead additional claims or add allegations that are not intended to cure the specific defects the court has noted.  Should any amended complaint exceed the scope of leave to amend

---

[26]Because the court dismisses plaintiffs' complaint in its entirety, San Fernando's motion to strike is denied as moot.  See *Sencion v. Saxon Mortgage Servs., Inc*., No. CV 10-03108 PSG, 2011 WL 320231, *1 (N.D. Cal. Jan. 28, 2011) ("The court has granted Saxon's Motion to Dismiss the breach of fiduciary duty cause of action for failure to state a claim, and with it, the prayer for punitive damages based on that cause of action.  Saxon's motion to  strike allegations seeking punitive damages is therefore denied as moot"); *Moreno v. GEO Group, Inc*., No. 07-CV-01630-LJO-SMS, 2008 WL 2875808, *7 (E.D. Cal. July 24, 2008) ("Defendants GEO and Watts' motion to strike the requests for punitive damages is DENIED as moot in light of the dismissal of the amended complaint").

granted by this order, the court will strike the offending portions under Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."); see also *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to federal law claim where the court had granted leave to amend only state law claims).

DATED:  June 25, 2015

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE